Good afternoon. Welcome to the United States Court of Appeals for the Sixth Circuit. Mr. Rossman, even if you talked with the clerk about rebuttal time and how much you're reserving, it helps us to know that. Sure. Thank you, Judge. I'm reserving six minutes for rebuttal. Alright. May it please the court. My name is Alan Rossman and I represent Arthur Tyler. I want to initially thank this court for the courtesy of granting our request to expedite the briefing in this matter. As originally scheduled, our reply brief would only have been due a week and a half ago. And I also want to thank this court for expediting this oral argument. It occurred to me that I don't think I asked the clerk to call the case. This is the case of Tyler v. Anderson, 13-4036. Thank you very much. It is. Judge, I did have co-counsel in this case, Ms. Vicki Wernicke. She's not here from lack of interest. Her mom had a serious stroke the other day. She's taken care of those responsibilities and given our responsibilities to Mr. Tyler and to this court, we thought it was important that we go forward. As this court noted in Thompson v. Bell, citing really the often quoted Blue Diamond Coal Company, the decision to grant a Rule 60b-6 requires an intensive balancing of two competing policies, one obviously being the finality of judgments, but the other is the incessant command of the court's conscience that justice be done in light of all the facts. It is an appeal to this incessant command, both that I want to address and that I need to speak. Mr. Tyler is scheduled to be executed in just under four months, and it cannot be just that Mr. Tyler should be executed when two of perhaps his most important and very meritorious claims properly presented in a first habeas petition remain unadjudicated. Can I just ask you about that point? Yes. I mean, I thought there was this rule that we review judgments and not opinions, and so what that means in this case is there was a judgment which was denying the petition, and I just thought that was the way it always worked. And so I guess the way I'm thinking about the case, but I'd love you to correct me, is it is resolved. I mean, there might be a good argument to make in responding to that judgment. You know, the district court was so sloppy they didn't even specifically address why they rejected this claim, but I guess I just thought that was the way it worked. We review judgments, not opinions, and so the issue isn't how much or how little explanation there is in the opinion. It's what was the judgment, and the judgment was deny the petition, so that means all arguments supporting it were denied. Your Honor, there's a couple points. The first is that that issue was somewhat discussed in Martinez Villa Real where there were claims presented and then not completely adjudicated. And the court, and the initial discussion was if we're presenting claims and there is a judgment, then the claim has been presented, and in fact there were claims that were not presented. The Supreme Court, in fact, has suggested in Collins v. Miller as well that habeas jurisdiction requires the resolution of all claims. Villa Real talked about how claims could be presented but not necessarily resolved and that there still could be an obligation of the court. The other thing is that in the 60B-6, this court's discretion is extremely broad. We don't ask, it would be different, Judge, if this were a successor petition. It would be different if these claims had, in fact, been adjudicated on the merits. But this is the incessant command of the court's conscience that justice be done. These are arguably his best claims. We don't have before us the materials that would show this, and they're not available electronically. Did he, in fact, brief that issue in the first instance in the district court? Yes, remarkably. I mean, I could tell it was in the habeas petition, but I couldn't tell whether it was in his subsequent briefing. You mean in the Traverse? Well, I mean, there's the petition, there's the Traverse, but presumably there was some other briefing before the district court entered its order, and I was unable to, and I looked at the two documents that appeared to be both his briefing and the state's response, but I couldn't get to the content of them. Your Honor, there was litigation at the time. There was even some discovery that was going on. There was Leroy Head, who was a critical player. Now, wait a minute, but that's not my question. My question is just whether it was briefed in whatever, other than the petition, formed the basis for the district court's consideration of your arguments. Yes, it was responded to in the return of written that was addressed in the Traverse, so it was briefed. Could I ask what I think is a related question, but maybe it isn't? Which are the claims that were not addressed by the district court? There was a coerced jury instruction claim. Right, I understand that. That's listed in his table of contents, but just isn't discussed when you go out under the table of contents? Is that right? Yes, and the district court acknowledges, and its decision is 209, I think it's 1169, it acknowledged that. The attorney general. I don't see if it's accurate. Yes, it was not addressed. But it is listed in the table of contents. Yes, Judge. What's the other one? As the court would note, the attorney general is recognized by the district court that the district court did not address that. The other was the coerced testimony of Leroy Head. I'm wondering about it because it seems like he does address that. Your Honor. Page 23 of the opinion, he says, Tyler claims that the prosecutor improperly threatened defense counsel and witnesses. Your Honor, in our brief we argued, the only reference to it is actually in a footnote where the court sort of recites basically what the claims were, but there's no analysis in the brief. Why isn't this analysis? In particular, he argues that prosecutor threatened defense counsel. But that's not the claim, Judge. Threatened Head with imposition of the death penalty if Head didn't testify against Tyler and alleged that Head had to be placed in protective custody to counter threats by Tyler. These claims were not raised on direct appeal to the Ohio Supreme Court and are therefore procedurally defaulted. However, even were the claims properly preserved for habeas review, the court would find them without merit. Am I looking at the wrong issue? Or you say that's not deciding it? Judge, I don't believe the district court did the analysis on that specific claim. Why isn't what I just read analysis? You just think it's slim analysis? Is that the idea? On the Leroy Head claim. Isn't that what you're arguing is that they coerced Head, threatened him with the death penalty, and that's why he testified that way? Yes. Or is it something else? No. Yes. And do you have the site, Judge, just from my record? I'm sorry? What am I reading? Yes. Page 23 of the district court's opinion. Thank you. Are you saying there were some other arguments in support of this that weren't? Your Honor, they dealt with the procedural default? Is that your point? That's part of it. And the jury instruction, so to be clear, the jury instruction claim is not in question. I understand the jury instruction is not in there. Right. And the Leroy Head claim, there was no recognition that the state court lost the record and lost the affidavit. Okay. So you're saying they didn't get into it, then? I'm done. But district courts dispose of issues all the time in a way that's other than the way the parties might prefer, and there's nothing wrong with the district court dealing with a claim by saying simply that it lacks merit, is there? No, there's not. And why is what Judge Rogers just read to you not that sort of ruling with respect to the Brady claim? Your Honor, I don't have a good answer for that because I'm not familiar with that. I believe it was addressed, there was a reference in the footnote. I did not understand the court's analysis to include that specific issue in terms of being coerced to testify. Maybe you could just, if you have it in your book, maybe you could just look at it and refer to that in response. That would be great. Perhaps I could do that in rebuttal. That's what I meant. Yes. And there is the other one which clearly wasn't addressed, although then you have the argument that Judge Sutton raises, which is nobody doubted that it was resolved, the argument was just that it wasn't addressed. But it wasn't adjudicated, Your Honor. Well, I don't see how you can say it wasn't adjudicated. If you raise something, if the court had just said habeas denied, would you have said the habeas case had not been adjudicated? Legally he could do that, couldn't he? He could say, I've read these 64 issues, I find no merit, bye. Well, let me put it this way. You would have appealed that, right? Well, I understand, but the district court acknowledged this as a legitimate 60B. The district court listed it in his table of contents, did not analyze all the other issues, didn't analyze that. And when we returned to the court, the court recognized without acknowledging that it had ever adjudicated it. What the district court recognized does not mean that that's necessarily the lens through which we must look at it. I mean, I think the question you're being asked is more fundamental and really goes not to what the district court thought in connection with the 60B motion, but what really is the status of these claims in terms of their having been adjudicated or not. Well, there's nothing in the record that suggests that the coerced jurisdiction claim was ever adjudicated. There's nothing to indicate it was ever discussed on the merits. That's true. But whether that means it was not adjudicated is another issue, I would suggest, which I think is kind of the import of the question Judge Sutton started out with, I think. Yeah. We review judgments, not opinions. I mean, God forbid we just said affirmed in this case. No one would say we didn't resolve the arguments. They would say we resolved them badly. We would say we resolved them thoughtlessly. And you'd go to the Supreme Court and say, boy, should they reverse. They couldn't even. There was no way to explain how to deny this, so they didn't say anything. And you'd do all those things, but you would never say it wasn't adjudicated. Your Honor, the nature of habeas, though, is such that the court gave COAs on an insufficiency of evidence claim. This was proposition of law number one in the Ohio Supreme Court. In Ohio, death has to be unanimous. The jury came back with a question saying some of us are positive that death is not warranted, the aggravators do not weigh the mitigators. Under Ohio law, if the verdict is not unanimous, it's an automatic life sentence. That instruction went to the judge, and the judge said— That couldn't have been argued to us four years ago? My point, Judge, is it's probably— It could have been argued four years ago, couldn't it? Or whenever it was we had this case? It was longer than that, I believe. When did we decide this case? 2005. Eight years ago then, okay. Couldn't that have been argued eight years ago before us? The Supreme Court didn't answer something that was argued to them? Your Honor, that's why this is 60 v. 6. Because what Judge Katz said is this slounds in my inadvertence, and he said my inadvertence was compounded by habeas counsel. Because habeas counsel, and this is the court using the word compounding, could have brought this to my attention. Could have brought it to my attention for a COA, could have brought it to my attention during a Rule 59E, or could have brought this to my attention in a 60B. And five days after the district court's decision, there's a letter to counsel from Mr. Tyler. And he says, I don't know if you know it or not. The judge never answered my deadlock issue. We have to get back with him on that. We need his answer. And he beseeches him to say at least file a motion to let him know the importance to this so he can grant us a COA because you let it pass, I'll die. At that point, if he had brought a Rule 60B motion, it would not have been based on inexcusable inadvertence. It would not have been based on inexcusable. It would have been based on mistake, right? Well, no, 60B.1 would include Judge Katz's inadvertence. And that's what Judge Katz ruled. There would be no counsel's inadvertence at that point. Correct. If he did it timely, there would have been no counsel's inadvertence, right? Correct. So what I'm having trouble with, as long as we're talking about the distinction between 60B.1 and 60B.6, has to do with whether there's a claim for inexcusable neglect. Is that inexcusable neglect on the part of the judge or on the part of the counsel? Inexcusable neglect on the part of the lawyer. All right. At that point, there was no inexcusable neglect, right? Had he brought it timely. So this is my question. I'm having trouble seeing how you can get around the one-year time limitation by virtue of your own inexcusable neglect and not bringing it within the one year. I mean, that's sort of incomparable. Because not all bad lawyering is attributed to the client. Fuller v. Quire was a case this court decided relatively simply. That inexcusable neglect was something that could be addressed in 60B.6, but that was inexcusable neglect, if I read that case correctly, that occurred prior to the judgment that you're trying to reopen, not as a way to get around the very time limit on when you can reopen it. Is that not correct? Let me put it this way. I think Fuller v. Quire was prescient. It was what? Prescient in the terms of Holland v. Florida. In an EDPA case, a habeas case, the Supreme Court found the extraordinary circumstances to grant equitable tolling based on really bad lawyering. And very similar to Mr. Tyler's case. The extraordinary circumstances language, the equitable language of equitable tolling, is identical to the language extraordinary circumstances of 60B.6. Are we talking about equitable tolling here? Are we talking about whether there's a difference between excusable neglect and inexcusable neglect for persons in 60B.1 to 60B.6? The language of Judge Alito was this. The near total failure to communicate with the client or respond to his inquiries over a long period of time, if true, establishes extraordinary circumstances beyond his control. Because the reference was to Pioneer, that a general garden variety negligence by a lawyer could be attributed to the client. Is this inexcusable neglect for 60B purposes that you're talking about? Yes, 60B.6. 60B.6, if the lawyer's neglect is garden variety negligence, like Pioneer suggested, it would fall under B.1. And if it was inexcusable neglect, it would fall under 60B.6. I don't want to interrupt your finishing the answer to Judge Rogers' question. No, please. Did you substantially answer his question? I was just going to say that the difference in Pioneer, which talked about this sort of garden variety negligence in terms of simple inadvertence, simple indifference, carelessness with regard to the consequences, that was very much the same language that the Supreme Court used to find, used to distinguish B.1 from B.6, and they cited the clap rod, those circumstances beyond his control. In Holland, similar to what they did in Quire, the analysis was that when a lawyer is not responsive, and in Foley v. Quire it was like two years he didn't get a response from his lawyer. It was the docket call they lost. But in Holland, it was virtually the same thing. He couldn't get an answer from his lawyer. How could the time limit ever expire? Clients got whatever 60B.1, 2, 3, 4, and they have a one-year limitation. And you're the lawyer, and it's getting towards the end of the year. I can decide whether to file it within the year or later than the year. If I had to file it within the year, I meet the deadline. If I file it later, that's pretty inexcusable, and I still meet the deadline. That just erases the one year, doesn't it? Because as Justice Alito says in Holland, that if the lawyer, that certain bad lawyering at that point, you're not acting as the agent. That you're acting in a manner that is inconsistent with your client's best interest. Can I ask you a question that relates to that but that's shifting gears a bit? Sure. Assuming that you're properly under 60B.6, given the time lapse in this case from 2002 when Mr. Tyler, at least, knew that the district court had failed to address his jury instruction claim, brought it to the attention of his lawyer, and 2013, the point at which the motion was filed, how can the motion filed in 2013 possibly have been brought within a reasonable time? You've got that whole time period when, whether it's Mr. Tyler, who's clearly aware of it from the get-go, or his counsel can reevaluate, take action at any time. You've got other things going on in the case. He's represented by counsel much of that time, but he's also trying to do things pro se, so he knows you can do things pro se. I mean, how can that 11-year gap possibly be within a reasonable time? Because when Mr. Tyler wrote to his lawyer five days after when the COA was possible and the lawyer didn't respond and he said, if you don't do this, I'm going to die, he wrote to him two, three weeks later when the Rule 59 was pending, and the lawyer didn't include it. But that doesn't answer the question. I mean, I'm looking at the entire time period. I'm not simply looking at the time period within which it could have been raised. I understand. Because Mr. Tyler went pro se. Because when he wrote during the COA, he wrote them when the 59E was pending. He wrote him during the course of the appeal saying, you need to entwine this. Well, of course you couldn't because there was no COA. Within two weeks that the appellate process was over, Mr. Tyler went back to state court pro se to litigate. I don't think, I mean, this is looking at little pieces. It's not, in my judgment, looking at the entire period of time lapse and providing some justification for that overall time lapse. But there is justification. The problem was the abuse of discretion comes with blaming Mr. Tyler. Well, but let's assume that there was neglect on the part of the lawyer in connection with not raising it in the 59 motion and not seeking a COA in either the district court or this court. Let's just say that all of that was error. It was still many years after that before the motion was filed, years during which Mr. Tyler was represented by counsel and he also filed things pro se. I mean, it's hard for me to see how you get from 2002 to 2013 and call that reasonable. You have to assess blame because once Mr. Tyler's pro se litigation was done and it came back up to this court and this court said it's pretty clear that Mr. Tyler is standing on what he raised before. We usually assign to, and I don't want to press this point anymore, but we usually assign to litigants, even those who are pro se, some responsibility for due diligence in assuring that their avenues of relief have been pursued. That's the pro se. Clearly, habeas counsel wouldn't file 60B6 on himself. Can I ask you one other thing real quickly? Sure. I think this has a yes or no answer. Is it appropriate to consider the merit, potential merit, of the jury instruction claim in connection with a decision to grant a 60B6 motion? Yes. And what is the case law that supports that? Because we have a good bit of case authority saying that's not appropriate. No, I think actually in Gonzales, I believe in dissent, Justice Stevens is talking about what a district court would consider in resolving a 60B6. He talks about the diligence of the client, which would include efforts to go pro se. So the authority is the Stevens dissent? I think he's talking about Lonchar, but he also talks about the probable merit of the case. Is there any other authority? Well, I know in- Because I'm trying to get the short answer. Well, this court in Jenks v. Allied Signal talked about, in rejecting the 60B6, I think, talked about the fact that the affidavit they were trying to get in was of probable no merit to the case. I thought Jenks was probably not helpful to you, but you think it is? I think it is in the sense that in rejecting the 60B6, it discusses sort of the need for diligence, but it also talks about that there's no merit to what they were trying to do. Go ahead. You can do follow-up. I want to ask one question. I'm not sure it's exactly related to what Judge Gibbons was asking. There's two claims here. One is the jury instruction, and one is the primary witness was coerced into testifying. To me, of the two, the one that is stronger, if any of them have strengths, is the latter. All right, the jury instruction. I mean, the jury did what it did, but the idea that evidence was suppressed or coerced might lead an innocent person to be executed is sort of definitionally stronger. But as to that one, I'm not seeing where this kind of the things that you rely on for diligence are present. I mean, I didn't see where Mr. Tyler was complaining about that one not being adjudicated at all. Every example you give is he's complaining about the other issue, and indeed he says, this is the only way I can win. So there's really, on that issue, doesn't seem to be anything in the way of diligent prosecution. Is that fair, or am I missing something? No, you're not. I mean, he's not a lawyer. No, I understand. He did talk in the letter, he talked about Leroy Head and how there was false testimony, but it's the jury instruction claim. The jury instruction claim was the one that he went back to the state trial and tried to prove and so forth. That's an acquittal of death, that jury instruction claim. The jury instruction is a life sentence. I understand. I guess my only question is, was there the same kind of diligence with respect to the jury instruction claim with respect to this Mr. Head claim? I mean, the Mr. Head claim, as I said before, it's a little hard to see that it wasn't adjudicated. It looks like it was adjudicated, and not even just adjudicated, but addressed, and he doesn't say, oh, it's never addressed. I just got the feeling you were sort of mixing two different ideas here. No, the first issue to me was all about the jury instruction claim. I mean, that was when Mr. Tyler was all over that, and he was very clear that I'm going to die if you don't raise it, and his lawyer never did. And that's why he went back to do this. But on that one, the lawyer might have thought it was a loser. Judge, it's pretty clear that the cases he went up on, I mean, this court rendered like a six-page decision. I mean, I've been doing habeas long enough. The insufficient evidence, if that's your best claim, that wasn't going to get Mr. Tyler. Now you're talking about ineffectiveness of the habeas counsel. Well, the inexcusable neglect is that here was proposition of law number one in the Supreme Court, and the district court never addressed it. It wasn't proposition of law one in the district court. It was proposition. No, it wasn't. It was buried in claim 24 or whatever the number was. Yes, and that's his appointed lawyer. It's not like Pioneer where, I mean, that's his appointed lawyer. And quite honestly, Judge, the government didn't bring it to the court. What? The government didn't bring it to the court's attention either. They didn't respond to it? Why would the government ever when, I mean, the nature of habeas litigation is that counsel all along the way pick and choose what claims they want to pursue. I mean, that is just part and parcel of habeas litigation. You start out with a very lengthy petition, and things fall by the wayside, and courts and the state are, I think, entitled to presume that they've fallen by the wayside because counsel are picking their best arguments. Because if you look at the briefs, it doesn't take long. When I got appointed as clemency counsel, the first thing you look at is what happened to this claim? Because he was acquitted. A jury says we are, some of us are positive that the aggravators don't outweigh them. Oh, it's as if. No, some of us are positive that death is not warranted. Let me ask one question, and it's going to be yes or no. So I'd appreciate that. If you're wrong about either of these claims not being adjudicated, so let's just say they're both adjudicated. I know you disagree with that, but accept that premise. I take it there's nothing left to the appeal? Because at that point, you can't use 60B-6 as a substitute for an appeal. That's right, Judge. So it really does turn on the adjudication. The adjudication, yes. Okay, that's all I wanted to know. Great, thanks. All right. Is it okay, or do you want to? No, I don't have a question. I was trying to tell Mr. Ross when his time was up, but you should ask him a question. Well, I know, you know, I'm always exasperated when my colleagues ask questions after the time is up, but here I am doing it, so that's fine. We're going to start keeping time. Yeah, I know. Give me 15 minutes, please. This is page 4 of your brief. You can come back. And it quotes the jury instruction, and the first word is if. If a group of jurors is positive. It doesn't say a group of jurors is positive. It says if. Is that right, or is that a misquote? Judge, quite honestly, I think you're parsing words. The question went to the jury to say, look, I mean, the assumption is I give you all the way through that when a jury presents that to the judge, it is saying. Other than that, they're deliberately saying some of us are positive and some are positive the other way. What do we do? Okay, you can say I'm quibbling, but if you follow the quibble, it's clear that they're asking a hypothetical question. The Ohio Supreme Court said this was an erroneous instruction. I mean, for a habeas petition, that's halfway home, and they said it was harmless. But it's unfathomable that that claim would not be addressed and adjudicated. Thank you. I'm done. You'll have your rebuttal time, Mr. Ross. May it please the Court, Charles Willey, arguing on behalf of the warden. Your Honors, it's indisputable that in 2002 the district court issues a decision, and it's over 10 years before the motion for relief from judgment is filed. It's also indisputable that the basis of that motion appears right in the record. I mean, essentially, 10 years go by and numerous opportunities which the district judges claimed failure to adjudicate the claims could have been pointed out. In essence, what it does come down to then is, is there any kind of plausible reason which would fit under, say, a Rule 60B, which somehow could render this an extraordinary circumstance to allow for a Rule 60B motion in a habeas case? Why are you going down this road? I just can't understand why this case just doesn't turn on the fact that claims are adjudicated whether they're addressed or not in an opinion. If it says judgment affirmed, every claim in favor of reversal is rejected. And without that hook, there's nothing left because you can't use 60B-6 for a way around an appeal or another vehicle for an appeal. We, of course, agree with that exactly, Your Honors. As a matter of fact, initially the warden argued that the claims were essentially adjudicated. Now, it's true that the first claim, the instructional error, was not, how do I put this, not addressed expressly, explicitly by the district court. But nevertheless, the petition, if you look at the nature of this petition, it was a scattershot petition. And at one point, many, many different legal theories and claims mixed together. At one point, the petitioner argued that the state courts did not give appropriate appellate relief to Mr. Tyler. And the district judge said explicitly, I've looked at the state court decisions. I've looked at how they handled the claims. And I find nothing in those state court decisions which indicate that the state courts acted contrary to or in unreasonable application of clearly established federal law. Now, the instructional claim is the number one claim. And yet, the district judge presumably knew what he was doing when he said he looked at the state court decisions and found that they're... We argued that that was implicitly coupled with the idea that, as the Honor said, appellate courts look at judgments. They don't review opinions. We argued explicitly, although not explicitly addressed, that the district judge, in fact, really adjudicated this claim. Now, we also pointed out, with respect to the second claim, that it was raised as a Brady claim. And the district judge explicitly referenced it as a Brady claim, the claim that the state somehow withheld evidence that the head was coerced. Applied the appropriate standards under Brady and denied the claim. Now, all that being said, that was our initial argument to the district court. The district court, however, did not base his decision on that. I mean, he went on to analyze it under Rule 60B. The better how you slice it... Yes, Your Honor, I guess that would have been a good thing to do after all. But if you look at this, how it all comes down to is, the only plausible... Now, that all aside about whether there was adjudications or not, the only plausible reason you could say somehow fit this into 60B would be to say, well, the lawyer was ineffective. The habeas lawyer just, he blew it. He dropped the ball. Well, that runs you smack right into well-established rules in applying 60B to habeas corpus case. Runs you right, like a tricycle, right into a truck. About the tension between Post and Martinez, I mean, so I don't think it bears on this case. I mean, if there's not an adjudication, I mean, if there is an adjudication, 60B-6 or 60B doesn't work. But it's still a little odd that Post is out there. Martinez, you know, Post doesn't mean the same thing it did pre-Martinez as it does post-Martinez. Whether that part of it should disappear entirely, I don't know. I'm just curious what you think we should do with that. Your Honor, that's a good question in the sense that looking at what did Martinez do, Martinez made a very limited exception to a well-established rule in federal habeas corpus that in order to have cause to excuse a procedural default in state court, you have to be able to show something, and the cause is your lawyer's error, that you have to show that you had a constitutional right to the lawyer who didn't raise the claim, and if you don't, it cannot be cause to excuse a default. Don't you think Post is misleadingly written broadly enough to suggest Martinez isn't right? So just reading Post by itself, isn't that dangerous for lawyers within the Sixth Circuit right now? No, I don't think so, Your Honor, and here's why. Because if you look at the background of Martinez, which goes all the way back to Coleman v. Thompson, Coleman v. Thompson explicitly addressed the argument about when can you use your lawyer's mistakes to excuse a procedural default in habeas corpus. And the court said, going back many, many, much precedent, hey, your lawyer's your agent, and the court explicitly rejected the argument in Coleman that, hey, my lawyer's no longer my agent if he's so bad, his mistake is so huge, that you really can't say he was acting in my interest. The court said, no, because he's your agent, and the only way that it makes a difference in that context is, unless the lawyer is constitutionally ineffective, then at that point it's no longer the lawyer's mistake, it's the state's mistake for not giving you a competent attorney. So that was the context of Coleman v. Thompson. Now when we fast forward to Martinez, what they're looking at is a limited exception to those very well-established rules, a very limited exception, and that limited exception was simply, okay, if you have the first opportunity, etc. Now Trevino said it's not quite as limited after Trevino. Yes, that's true, Your Honor. It's not quite as limited, but nevertheless it all does go back, though, to the whole idea of default in habeas corpus, and when can you get around the well-established rule, going again all the way back to Coleman v. Thompson, that your lawyer is your lawyer, he's your agent, and what he does, well, if he makes a mistake, the mistake really is given to you because that is the general rule. Now if you look hard after Martinez to rely on that statutory provision, though, is that correct? Again, Your Honor, I would think that because to a certain extent Martinez does, at least if you look at it very, I hate the word superficially, it does seem to indicate that perhaps it's not quite as strong, the post is not quite as strong as you might think. But in one respect having to do with the statutory provision that says you can't get relief based on habeas. Do you know the statute I'm referring to? Yes, and again, Your Honor, I don't think, again, I don't see how Martinez and Trevino really have an effect on that. I still think the statute is very clear. Well, if you read that statute strongly, those cases are wrongly decided. I'm not talking about Coleman. I understand your point about Coleman, but if you're just talking about that statute, it would seem on its face to preclude the result in Martinez. I don't understand why, Your Honor, because Martinez is talking about it. In this proceeding, and in Martinez they do. Actually, Your Honor, our reading of Martinez is they're relying on the ineffectiveness of state post-conviction counsel. But that's still covered by that statute. Well, the statute also includes, it separates, the statute also talks about federal habeas corpus and state post-conviction. That treats them the same though, right? In the sense that ineffectiveness of neither one can be used? Yes, but at the same time, Your Honor, even in Martinez, you're not saying, Martinez doesn't say that now we have habeas corpus petitioners can now obtain relief based on. I'm just saying it undermines reliance on the statute is all I'm saying. The argument is still there. Just that the statute isn't going to work very well for you because it didn't work very well in Martinez. Again, and that's where I guess the disconnect I have, Your Honors, is that it seems like Martinez was talking again about the performance of state post-conviction. How much would you object to this statement? I mean, I guess it's dicta. It depends on how much we think it bears in the case. But just a statement that just says, before relying on post, you ought to read Martinez and Trevino, period. I'm not saying exactly how they interact, but it just seems to me highly dangerous to leave post out there without someone saying, be careful, because I think you can look at that and say, start making arguments that conflict with Martinez and Trevino. I guess I'm surprised you would object to simply saying that. Only in this sense, Your Honor, is that perhaps I should say this, is that in capital cases, as you can imagine, sometimes exceptions that start out limited have a way of expanding and approaching the swallowing the rule. And I suppose perhaps I'm somewhat jaded in the sense that always having an eye out there for exceptions that come along that may actually turn out to be rule-swallowing exceptions after all. And I would only just make the point, Your Honor, that again, all the talk about in Martinez, we are really talking about a gateway to allow for the consideration of another claim. So in that sense, you're really not getting relief based on the alleged ineffective assistance of your post-conviction counsel if you invoke the Martinez and Trevino exception. All right, that's why it doesn't bear on this case. Yeah, that's why it would be dicta. I agree. Thank you, Your Honor. I'd like to cut through if I could take just a moment. There's a lot of very thoughtful but technical ways in which you could say that we can't get to the underlying issue. And some of them are fairly compelling, although there's strong arguments that opposing counsel makes. But I want to get a little bit to understand what was resolved, what was adjudicated by the district court. And I assume that I'd like to know that when this argument was made, even though it was addressed only briefly, if at all, that you had a response back then. And I'm wondering what the content of that response was to the arguments that are now raised about coercing the testimony of the primary witness that caused this person to be sentenced to death. Does my question make sense? Yes, it does, Your Honor. What was your argument? I don't believe I was on the case at that point, but I would imagine my recollection would be that it would nevertheless not meet the materiality standard of Brady. In other words, whatever was... The primary witness was coerced? No, Your Honor. In this sense is that the jury was well aware of Head's prior inconsistent statements. The jury knew... The jury was aware of the prior inconsistencies. Yes, they knew that he initially said he was the shooter. I mean, they knew that. Did they know that he recanted afterwards, or did that happen after the... Oh, they knew that, too. As a matter of fact, my understanding of the evidence was that the reason for rejecting it is the eyewitness testimony was totally inconsistent with Head actually being the shooter. As a matter of fact, the way I think the testimony came down to was a thin man... The shots are fired. A thin man runs away. This is a third witness now, or another witness. Another witness, yes. And then a heavier set man, who was Tyler, then runs. And under the sequence of the shots and the witnesses' descriptions of the type of persons they saw, it was extremely unlikely that the jury would have concluded that somehow it was Tyler who ran away first. He testified that he wasn't even there and that he had actually been in a store trying to cash a welfare check or something. And again, assuming this is relevant, which is a big assumption, are you saying that if we were to be able to come up with the arguments that were made, part of the argument would be that all of the stuff that counsel says should have been given to the jury was, except for testimony about the coercion? Yes. About the coercion that the prosecutor said, you may be prosecuted if you don't... Yes. And the answer, you think, probably is that even if they'd heard that evidence, it wouldn't have made a difference? Yes. Yes, again, and that's based on my understanding of the other evidence which indicated that Tyler was the shooter. What's the answer to that question with respect to the jury instruction issue? You asked the same question about what you said with respect to the jury instruction issue. I would say that the Supreme Court of Ohio's decision was not contrary to or unreasonable application of federal law. I believe the Supreme Court of Ohio felt that the instruction was perhaps not a correct statement of state law, but nevertheless that Tyler was not prejudiced by the instruction. Well, I preface this by saying I have some hesitancy in thinking that we can even consider this, but having said that, I will nevertheless. It looks to me like in looking at the instruction that was, well, first in looking at the jury's question, which is indeed a question, and there's no rule that you can't, if a jury is indicating perhaps some difficulty in agreeing, there's no rule that because it's a death penalty case, you can't go forward and give an appropriate instruction. So the error in the instruction is, or the clearest error in the instruction, is the portion in which there's a reference to the fact that another jury will decide the case on another day. And it seems like the instruction pretty closely adhered to a typical modified Allen charge given in both federal and state courts, except this reference, which was inaccurate in the context in which it was given. Yes. And one can argue about whether that error of state law would actually have the tendency to apply less pressure on the jury to agree than perhaps it would have felt had the instruction been otherwise. But what did you say about that? Again, I'd have to just, I'd have to go by. Just rely on the, I mean, you think you would have relied. I think we would have relied on that very fact that it's, first, again, basically an incorrect statement of state law doesn't get you very far in Habeas Corpus. Because, of course, we would have to find that that amounted to a due process violation. Yes. And, again, I think the Supreme Court. I mean, if we were considering this issue, which we may or may not be appropriate for our consideration. And, again, essentially, my recollection is the Supreme Court of the House said, well, it may have been wrong, but there was no element of coercion in it. I mean, there was nothing in the instruction that could be reasonably interpreted by the jury as coercing them into reaching a verdict. I mean, it may have been an incorrect statement of what would happen if they didn't, but it nevertheless didn't rise to the idea of being coercion. Is typically the jury advised that what the effect is of their failure to agree, or is that something that's not a part of the instructions? To my understanding, it's not a standard part of the instruction. That's right. And, of course, just to add to what you're saying, Your Honor, is that, of course, we would submit that you just can't get to the underlying claims. I didn't mean to run down a rabbit trail without a caveat that I was not necessarily that I understood it might well be a rabbit trail. Understood. And, Your Honors, I guess ultimately what it comes down to is, again, that if you look at this, really in the big picture, I guess it is the best thing to say, is in the big picture, the court, the district judge, reviewed the petition, reviewed the many, many somewhat convoluted claims, issued a judgment, and normally that's the assumption. The courts make judgments and they decide what's before them and the judge denied relief. Adding that to the idea that, at least we felt initially, there was enough in the record to indicate not simply that, but the judge, in fact, did assess, did do some reasoning and assessing of the merits of the claims without simply flat, just denying relief. Now, given that, and given, really, the barrier, although the barrier erected by post is somewhat lower, perhaps, somewhat weaker, nevertheless, the barrier that's erected by that case and the statute and the general idea that mistakes of counsel are attributed to the client, and given the length of time involved, we would submit all those things together, Your Honors, would indicate that district court did not abuse its discretion in denying the Rule 60B motion. And, again, we get back to the standard of review, which is abuse of discretion. No clear error of law here, no clear errors of fact. Ultimately, we would ask that the court affirm the judgment of the district court. Thank you. Unless there are any more questions. Mr. Rossman. Judge, I will address yours. I agree what you read. That's what it says. The analysis does not include the analysis of those claims, of the head claim. It does suggest it was defaulted. I can tell you it was improperly defaulted and there's no discussion. You mean it's improper to say that it was defaulted, is that? Yes, but the analysis, when the court goes on to say there was no analysis. They do sort of talk about it. No, you're correct. The issue is stronger on the jury instruction claim. Clearly it is. The district court denied this Rule 60B-6 petition not because, and I would suggest to this court, that the district court is the best arbiter to say what it did and did not adjudicate. Nowhere in the district court's decision does it acknowledge that it adjudicated these claims. It could have said, I adjudicated these claims, now go home. It didn't. It dismissed us out because it found the grovelment of this complaint was the court's inadvertence, mere inadvertence, and not the attorney's inexcusable neglect. There is a strong line of cases, and it starts with Holland v. Florida, where Judge Alito makes clear that when lawyers don't respond to the clients, that we don't constructively attribute their actions to them. Those were the extraordinary circumstances of equitable tolling, and they are the extraordinary circumstances of 60B-6. That became the holding in Maples in the context of procedural default. The language of Coleman, where we attribute the behaviors of attorneys to their clients, is the language of inadvertence and the language of ignorance. This was not that. The letter from Mr. Tyler beseeching his lawyer, you have to address this issue. The government says this issue under Ohio law is clear. If the jury is not unanimous for death, then it is an automatic life sentence, and the instruction to them is go back and decide whether it's 20 years before you hit the board or 30 years before you hit the board. In this case, when they come back and say some are positive, that death is not warranted, this was after two days of deliberation, according to the Supreme Court finding, and some say the other ways, the instruction is then go back and decide which life sentence. Mr. Tyler is going to be killed in less than four months, and this claim has not been adjudicated, and there is no indication by the district court. In fact, the district court in its decision, and the page is 1169, it makes reference to the fact that the attorney general acknowledges that the district court did not address this claim. If the court had addressed this claim, it is far stronger than any claim that this court has heard in this case. It is far stronger than a claim of insufficiency of evidence. It's stronger than the Brady claim. It's stronger than any claim because it is an acquittal of the death penalty, and that's it. He's already offered it. Because of the word convinced? Yes, because there was no indication. The claim that you think should be raised, the claim that the jury could not be instructed further after they asked the judge what if question, or is the constitutional claim about the content of the instruction that was given? Because only death needs to be unanimous, it is coercive to say go back and bring me a unanimous verdict. Lowenfield was the clearly established. That's not exactly what the trial judge said, is it? They said some of us are positive, some of us are positive. Is the error that is claimed to be of constitutional dimension not declaring that the jury could not agree at that point? Yes. Or is it the content of the instruction that was given, which was really the subject of the Ohio Supreme Court's finding of error? It was not. Ohio law says in that circumstance you have a life sentence. But I understand that. The point is a trial judge gets to make judgments about whether a jury is in fact deadlocked and whether it's a jury pondering the death penalty or one not. The trial judge in this case apparently interpreted this question as not a declaration that the jury was in fact ultimately unable to agree. It interpreted it as a question about what if, and then the court gave an answer. So the question is, was the failure not to accept the deadlock at that point or was the error the giving of the further instruction and the content of that instruction, or both? It was both, because the content of the instruction is coercive. Would there be, are both considered separately of constitutional dimension? To the extent it's coercive. There is a lesser due process claim when you violate state law in this context because arguably it was an acquittal for death. But it is the idea of going back and because another jury will have to decide this and this is expensive and so you need to be a unanimous verdict. It's only unanimous for death. So it's inherently coercive in that sense. If I could just finish up, I would say that because this is 60B, Judge, your concern about the 11 years, I would address, I would suggest this court that Justice Scalia in Gonzales talks about the virtues of finality as a policy. Standing alone are given little weight in the context of 60B and that in Thompson versus Bell, this court referring to the U.S. versus, Sanders versus United States Supreme Court case said we heed the Supreme Court's admonition that conventional notions of finality, of litigation have no place when life and liberty is at stake. Death is still inherently different in this case. And in response to your question, I would suggest that in our brief, we did cite to Collins versus Miller. It's an old case. It's 1920s. But the Supreme Court talked about that in the habeas context that arguably for a judgment to be appealable, for a judgment to be final, it has to include not just the whole subject matter but it says as to all causes of action involved. Counsel, I just want to tell Mr. Rossman, in order to figure this case out for myself, I asked you some hard-edged questions and I appreciate your thoughtful responses. Well, thank you, Judge. I appreciate you saying that. Are there no other questions? We thank you both for your argument. We'll consider the case certainly very, very carefully and thoroughly.